FILED 13 JUN '16 11:38 USDC-ORP

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### PORTLAND-DIVISION

**BRIAN A. JEREMIAH,**                                    Civil Case No. 2:16-CV-00532-TC

                  **Plaintiff(s),**            **PRISONER CIVIL RIGHTS**
                                       **COMPLAINT**

  v.

**MARK NOOTH Superintendent SRCI,**                    **42 U.S.C. § 1983**

**Rec Specialist BIDWELL_____,**

**SGT. ALY,**

**Hearings Officer JOE CAPPS,**

**Officer DOTSON___SRCI_____,**

**John/Jane Doe / officers on duty in DSU on 08-21-15 at 9:45pm- 10:30pm, and/or 08-22-15**

**in the housing unit I was in at SRCI.**

**Sgt. Garcia SRCI**

**Grievance Coordinator J. Taylor**

**John and Jane Doe, that was/were acting as assignment coordinator on 8-10-15**

**Lt. PARKS SRCI**

**J. GILMORE___SRCI**

**Counselor J. DELGADO___SRCI_____,**

**Counselor M. JONES SRCI.**

**Lt. PARKS SRCI**

**Management of the facility (Sgt.'s, LT.'s and above) and with those who assign inmates to**

**housing units throughout facility**


**Defendant(s) in their official and individual capacities,**

A. Have you brought any other action or appeal in a court of the United States while a prisoner?

☐ Yes          ☒ No

## IV.

A. Place of confinement:  Snake River Correctional Institute

B. Is there a prisoner grievance procedure in this institution?

☒ Yes          ☐ No

C. Have you filled a grievance concerning the facts relating to this complaint?

☒ Yes          ☒ No

If your answer is "No", explain why not:

Part of this suit is related to a Hearing and such incidents are not grievable. The only Administrative options I have is a review and I did the review process. Other parts are grievable and those I did grieve.

D. Is the grievance process completed?

☒ Yes          ☐ No

## V. PARTIES

A.    Name of Plaintiff: Brian A. Jeremiah

Security Identification No: 11464377

Address: 777 Stanton Blvd. Ontario, Oregon 97914

*(In item B below, place the full name of each defendant, his/her official position, and his/her place of employment.)*

B. Defendant  Mark Nooth is employed as Superintendent  at Snake River correctional Institution.

Defendant Officer Bidwell is employed as Correctional Guard  at Snake River Correctional Institution.

Defendant SGT. Aly is employed as Sergeant at Snake River correctional Institution.

Additional defendants: Officer Joe Capps (Hearings officer at Snake River Correctional Institution.) Officer DOTSON __ SRCI, John/Jane Doe / officers on duty in DSU on 08-21-15 at 9:45pm- 10:30pm, and/or 08-22-15 in the housing unit I was in at SRCI, Sgt. Garcia SRCI, Grievance Coordinator J. Taylor, John and Jane Doe that was/were acting as assignment coordinator(s) on 8-10-15, Lt. PARKS SRCI, J. GILMORE __ SRCI, Counselor J. DELGADO __ SRCI, Counselor M. JONES SRCI,

## IV. STATEMENT OF CLAIMS

### Claim I

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

My 14th Amendment right to privacy (medical issue privacy)  was violated by Officer Bidwell and Sgt. Aly on 08-03-2015.

**Supporting Facts:**

On 08-03-15 I was in the complex 3 gym at SRCI during an approved 1 hour long gym class from 7:45am-8:45am. At about 8:05am (after 17 minutes on a timed exercise bike and about a 3 minute walk to class and check-in process) I felt a rumble in my stomach and needed to use the restroom. I went to Officer Bidwell, who was the officer on duty that day in the complex 3 gym, and asked him if I could use one of the 2 restrooms in the gym because I really needed to "go" bad and that I had a condition from eating the food that morning (pancakes, oatmeal and peanut butter). He told me the bathrooms were staff only and that I had to go back to my room to use the toilet. Across the hall from the gym is another bathroom… I asked if I could use that, he said "no" again and repeated that I could go to my cell right now to use the restroom because the hallway door, which is normally locked, was still open at the time. My room was quite a ways away and I wanted to work out, also line movement was over and I was under the understanding that inmates were not allowed in the halls without a pass except during line movement and than only for approved call-outs. I did not have, nor was I offered, a hall pass and I didn't want to get

in trouble- also my stool urgency was subsiding. I decided to walk around the gym for a while to see if it came back and to continue to exercise.

About 5 minutes later I determined that I was not feeling well and that this was probably not going to just go away this time. As the gym video will show (if it was preserved, which I have many documented requests to preserve it), I started looking for Officer Bidwell to get the hallway door opened (which had been shut by this time), but he was not anywhere in the gym. Eventually you will see me go over to the door to look for a button to push and request from the main control room to go to my room: there is no such button and no one else to request the door be opened except Officer Bidwell. As the video will show I walked around looking for him until I found him in his "inner" office on what sound like a jovial personal call, replete with laughing and non-work related talk. The gym has an office in the corner and then within that office is a separate room from which an officer cannot sit at the desk and see the gym at all- which is a violation of the code of conduct for ODOC workers who are required to be attentive to duty at all times (DOC policy # 20.1.3)- Officer Bidwell was sitting at this desk being inattentive. I would normally go in and ask him to open the door, but just about 3 weeks prior I tried to interrupt his personal calls to volunteer to pull weeds out of the softball field on my own time and he yelled at me from his inner office, "What the hell are you doing sneaking around my office?!? Get the hell out of my office!". As such I was understandably reticent to poke my head in again.

I decided to walk around a bit more and then I decided to try the exercise bike to see if that would help my rising urgency. I was getting desperate by this point because the diarrhea was feeling VERY urgent. The bike did not suffice to subside my urgency… I decided that at any cost I needed to get to officer Bidwell, even risking violating a direct order to not come in his office. As I exited the bike room the diarrhea became unstoppable and I hunkered up against the wall while members of multiple prison gangs walked around the gym and diarrhea ran down from my shorts all over my legs and some on the floor. No one noticed at this point so when it stopped I was in a panic and I grabbed a roll of toilet paper that was used to clean off the surfaces on the exercise equipment and I wiped up the ground. I moved quickly into Officer Bidwell's office in hopes of not becoming a target of violence, ridicule, blackmail and extortion by members of the gangs present at the time. I tried to wipe my legs off but to no avail- finally Officer Bidwell got off the phone and came out of his little room… to a guy with diarrhea all over his legs standing in his office. Needless to say he was not happy. He started to yell, (please excuse the curse words, they are a quote) "You just shit in my office!" over and over, pretty

loudly too. I asked if I could use the restroom just a couple feet outside of his office door so this situation could be kept between us, but I think he was busy not understanding why I "shit" in his office so he did not answer me.

This is when Officer Bidwell walked out into the gym and started shouting about how I had just "shit" in the gym. He forced me to walk out in the gym in front of multiple gang members with diarrhea running down my legs, as he walked across the gym and shouted at me about how I just "shit" in the gym. At one point during Officer Bidwell's walk across the gym Officer Bidwell stopped directly next to 2 members of an Infamous white prison gang that is well-known for violence, extortion and all other forms of prison problems against people with questionable charges (as defined by the prisoners themselves, and of which I am a member of the questionable group as was known by Officer Bidwell from prior conversations in which he asked why I had not gotten my attorney to make me fake paper work so I wouldn't have problems in prison with my charges), and he turned to them to say "This guy just 'shit' over there" and he pointed my direction and the direction of the medical accident. I see no penological purpose to point out my medical issue to gang members, or anyone else for that matter (this issue will be brought up again in claim 3 of this same filing as an eighth amendment claim for intentional humiliation and a guard trying to cause retribution against me for my medical accident).

In Doe v. Delie the court held that the 14th Amendment protects an inmates right to medical privacy, subject to legitimate penological interests. This has been upheld in many other cases which I will add in proceeding briefs (or whenever I am supposed to, this is my first ever lawsuit, so I am not sure how it goes really). Diarrhea is clearly a medical issue and is not a normative health status. Diarrhea has a treatment plan in the Oregon Department of Corrections medical documentation… which somehow I would like a copy of. To protect my privacy and safety, Officer Bidwell should have had everyone go back to their units and kept me in the office while this whole situation got cleaned up discreetly.

At this point Officer Bidwell reached the window and looked across the 4ft hallway to the bathroom door directly across from the gym, to see if I could use that to clean-up, it was occupied, so he said "this bathroom is full, go to your room and clean-up". As I stated earlier my room is quite a ways away and I had diarrhea all over, as I exited the gym I noticed people all over in the hallway and decided that for my personal safety and to contain the dripping, I should just use the first bathroom he checked across the hall. I went over there and waited about 30 seconds and the bathroom emptied. As I entered round 2 hit… I had barely enough time to hit the

toilet. Had I been walking down the hall I would have had another accident in front of everyone in the hallway. Not only would this have been unsafe for everyone else but it would have put a large target on my back... even larger than Officer Bidwell already put there by indiscreetly handling my medical situation. It took me about 10 minutes to clean-up and when I exited the restroom there was a contingent of guards waiting to "arrest" me and take me to segregation. The Sgt. On duty and at the scene of the arrest was Sgt. Aly. Sgt. Aly also handled my medical situation carelessly and achieved no legitimate penological purpose in degrading me in front of inmates. The video of the hallway arrest (which I requested multiple times to be preserved, in addition to the gym video to be preserved) will show at least one or more inmates present at the time of the arrest. During the brief questioning by Sgt. Aly, he, in a very loud voice, asked me why I "shit" all over the gym. I told him I had a medical situation and he asked me if I had a note from my doctor that said I could "shit" anywhere. I told him I did not have a " 'shit' anywhere note", but that my medical condition was sudden.

He told me that I was going to be taken to DSU and that if I talked out of turn or even looked sideways I would be assaulted (thrown intentionally to the ground). I asked if I could explain, he said he already knew what happened... you got mad and "shit" in the gym he said. I think you will agree that to summon diarrhea, at-will, using pure-anger, would be quite a talent. This is clearly not what happened, but he didn't let me speak in my defense. This ends the portion of my claim in regards to Medical privacy, I did want to add that even months later in November I heard a guard in a group of 3 guards say "That's the Gym 'shitter' ", still perpetuating a reputation for assaultive diarrhea, I tried to correct them but there was no time due to line movement, also they were in a dark room so I could not tell if it was Officer Bidwell talking.

Also of interest, and this will be brought back up in my 8th Am. Claim #3, I was later attacked by a member of the exact gang that Officer Bidwell stopped to point me out to. I had never had an issue with anyone prior to that time. Once I got out of segregation, the very first time I got out in the dayroom I was attacked by this gang... coincidence?

I would also like to point out that the supreme court has recognized that it is difficult to show damages in a medical privacy claim due to societal indifference relating to most medical conditions, but the nature of the caveat they presented was that prison is similar to a junior high school (essentially) and that it is a place where anything that shows you as out of the ordinary can and will be used against you for violence and retribution by other inmates and that privacy

claims hold more sway in such an environment especially if they draw a target on an inmates back… which this did. There existed no legitimate penological purpose in screaming and pointing out my medical condition to any or all inmates present in the gym. I assert that communicating this to inmates, in fact, has the reverse effect and obviously has led to my future assault on 08-21-2015 (see claim #'s 6-13 to reference the assault on 8-21-2015).

### Claim II

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

14th amendment of the Constitution Due Process clause was violated by Joe Capps (hearings officer) and Superintendent Mark Nooth.

**Supporting Facts:**

During my hearing on August 10th 2015 at SRCI,  I was not allowed to speak on my behalf from my prepared statement that detailed all the facts of the disciplinary case and offered my request for presenting evidence, calling witnesses and requesting an investigation: I am afforded that right in the "Inmate Rights" sheet I was handed while in segregation on 08/04/15. I advised Officer Capps that I had written the statement so I would not forget anything I needed to say and that my evidence was in the document I intended to read. I was not allowed to read the document for more than ½ of the first page and thus was not allowed to present evidence or call witnesses that were requested (along with an investigation) in my statement. This is very clear in the audio recording of the hearing. I was intimidated into not speaking and was questioned as to why I could not follow an order and just answer the questions without reading my statement. This question was presented to me in such a way as to say that the charge of disobedience of an order must be true because I can't even follow the order he is giving me, which felt to me, at the time, like I was being threatened with further sanctions and/or being found guilty of my charge if I did not forfeit my right to a fair hearing and my ability to present evidence, call witnesses or ask for an investigation- all rights afforded me in the "inmates rights" sheet. Superintendent Mark Nooth was asked to review the hearing and in an inter-facility communication (not a kyte)he told me he investigated and was not going to reverse the decision and that the hearing was done properly; as such I see Direct Liability in the lack of action to correct an obviously

aberrant hearing process, and in fact an acceptance of such practices, which are rampant and not isolated. I assert that Officer Capps' refusal to allow me my constitutionally mandated right to a hearing with evidence and witnesses and a prepared statement served no legitimate penological purpose and, in fact, suppressed and thwarted the smooth and honest functioning of the hearing process.

### Claim III

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

8th amendment for inciting other inmates to attack me and deliberate humiliation that served no penological purpose, both by Officer Bidwell (the attack did come to fruit shortly after this incident, the very first time I went to day room after getting out of segregation for this incident)  and also SGT. ALY,

**Supporting Facts:**

I would submit the same story as in "claim 1" under the medical privacy claim, and in-fact, after this brief explanation, just to be safe, I will copy/paste the entirety of the applicable portion of the "claim 1" story so it is here also. You may ignore that portion as it will be identical to above... I will note where the copy/paste begins.

The violation pertaining to the immediate claim of deliberate indifference to my safety and intentional humiliation by Officer Bidwell, happened in relation to the loud and repeated voicing of my diarrhea incident to several groups of gang members that were present in the gym at the time of my incident. Then, in the process of walking across the gym to check the bathroom and while yelling to everyone about me "shitting" in the gym, Officer Bidwell, as noted in "claim 1" stopped and directly pointed me out to 2 gang members and said "This guy just 'shit' over there!". I am confident that the court will find little to no penological purpose for a guard to stop and intentionally endanger a vulnerable inmate with "questionable" charges, according to prison politics, in front of known gang members. As stated in "claim 1" Officer Bidwell was well aware of my status regarding prison politics and had even previously questioned me as to why I had not gotten fake papers written up by my attorney so I could not be a target. For Officer Bidwell to know this information and know (or should have known) that the inmates he was talking to were in a gang known to extort and assault vulnerable inmates points to clear deliberate indifference.

.

The conversation where he asked me about the fake papers was during a call-out earlier in the summer where I asked him about starting a music creation program in the music room in the gym; the call-out will be on my record. I would also like to point out an undisputed fact that Officer Bidwell told me to walk through the halls in front of many other inmates and staff with diarrhea running all over to go to my cell to clean-up, which I contend is intentionally humiliating and endangering to me and other people. On 08-21-2015, just after I got out of segregation for this incident, I went out to the dayroom and got assaulted by members of the gang that was present at the time of the diarrhea incident. I had not had any issues for a full year before this. Not until this incident was advertised to the entire gym class was I put in the spotlight; Rec Specialist Bidwell intentionally put me in such a spotlight by pointing me out at least 10-15 times while walking across the gym.

    ***BELOW IS A COPY/PASTE OF CLAIM 1's DESCRIPTION OF THE INCIDENT;***
***YOU MAY IGNORE IT AS IT IS IDENTICAL TO CLAIM 1.***

    On 08-03-15 I was in the complex 3 gym at SRCI during an approved 1 hour long gym class from 7:45am-8:45am. At about 8:05am (after 17 minutes on a timed exercise bike and about a 3 minute walk to class and check-in process) I felt a rumble in my stomach and needed to use the restroom. I went to Officer Bidwell, who was the officer on duty that day in the complex 3 gym, and asked him if I could use one of the 2 restrooms in the gym because I really needed to "go" bad and that I had a condition from eating the food that morning (pancakes, oatmeal and peanut butter). He told me the bathrooms were staff only and that I had to go back to my room to use the toilet. Across the hall from the gym is another bathroom... I asked if I could use that, he said "no" again and repeated that I could go to my cell right now to use the restroom because the hallway door, which is normally locked, was still open at the time. My room was quite a ways away and I wanted to work out, also line movement was over and I was under the understanding that inmates were not allowed in the halls without a pass except during line movement and than only for approved call-outs. I did not have, nor was I offered, a hall pass and I didn't want to get in trouble- also my stool urgency was subsiding. I decided to walk around the gym for a while to see if it came back and to continue to exercise.

    About 5 minutes later I determined that I was not feeling well and that this was probably not going to just go away this time. As the gym video will show (if it was preserved, which I have many documented request to preserve it), I started looking for Officer Bidwell to get the hallway door opened (which had been shut by this time), but he was not anywhere in the gym.

Eventually you will see me go over to the door to look for a button to push and request     from the main control room to go to my room: there is no such button and no one else to request the door be opened except Officer Bidwell. As the video will show I walked around looking for him until I found him in his "inner" office on what sound like a jovial personal call, replete with laughing and non-work related talk. The gym has an office in the corner and then within that office is a separate room from which an officer cannot sit at the desk and see the gym at all- which is a violation of the code of conduct for ODOC workers who are required to be attentive to duty at all times (DOC doc policy # 20.1.3)- Officer Bidwell was sitting at this desk being un attentive. I would normally go in and ask him to open the door, but just about 3 weeks prior I tried to interrupt his personal calls to volunteer to pull weeds out of the softball field on my own time and he yelled at me from his inner office, "What the hell are you doing sneaking around my office?!? Get the hell out of my office!". As such I was understandably reticent to poke my head in again.

        I decided to walk around a bit more and then I decided to try the exercise bike to see if that would help. I was getting desperate by this point because the diarrhea was feeling VERY urgent. The bike did not work… I decided that at any cost I needed to get to officer Bidwell, even risking violating a direct order to not come in his office. As I exited the bike room the diarhea became unstoppable and I hunkered up against the wall while members of multiple prison gangs walked around the gym and diarrhea ran down from my shorts all over my legs and some on the floor. No one noticed at this point so when it stopped I was in a panic and I grabbed a roll of toilet paper that was used to clean off the surfaces on the exercise equipment and I wiped up the ground. I moved quickly into Office Bidwell's office in hopes of not becoming a target of violence, ridicule, blackmail and extortion by members of the gangs present at the time.

        I tried to wipe my legs off but to no avail- finally Officer Bidwell got off the phone and came out of his little room… to a guy with diarrhea all over his legs standing in his office. Needless to say he was not happy. He started to yell, (please excuse the curse words, they are a quote) "You just shit in my office!" over and over, pretty loudly too. I asked if I could use the restroom just a couple feet outside of his office door so this situation could be kept between us, but I think he was busy not understanding why I "shit" in his office so he did not answer me.

        This is when Officer Bidwell walked out into the gym and started shouting about how I had just "shit" in the gym. He forced me to walk out in the gym in front of multiple gang members with diarrhea running down my legs, as he walked across the gym and shouted at me

about how I just "shit" in the gym. At one point during Officer Bidwell's walk across the gym Officer Bidwell stopped directly next to 2 members of an Infamous white prison gang that is well-known for violence, extortion and all other forms of prison problems against people with questionable charges (as defined by the prisoners themselves, and of which I am a member of the questionable group as was known by Officer Bidwell from prior conversations in which he asked why I had not gotten my attorney to make me fake paperwork so I wouldn't have problems in prison with my charges), and he turned to them to say "This guy just 'shit' over there" and he pointed my direction and the direction of the medical accident. I see no penological purpose to point out my medical issue to gang members, or anyone else for that matter (this issue will be brought up again in claim 3 of this same filing as an eighth amendment claim for intentional humiliation and a guard trying to cause retribution against me for my medical accident). There existed no legitimate penological purpose to screaming and pointing out my medical condition to any or all inmates present in the gym. I assert that communicating this to inmates, in fact, has the reverse effect and obviously has led to my future assault on 08-21-2015 (see claims #'s 6-13).

### Claim IV

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

Using Pendent Jurisdiction I would like to address several issues that would normally be applicable on state tort claims but pertain to the incidents in claim #'s 1-5. I will address the specific circumstances of each issue under the supporting facts heading (hopefully I am doing this within accepted guidelines?). Various officers named below and those for which I have no access to their names are at fault for the issues in this claim, I will try to name who I can in the proceeding paragraph.

**ISSUE ONE:** is intentionally disbursing known incorrect information (box #'s to send kytes to) to inmates who are trying to contact superior officers to address an issue; which could be deliberate or at the very least negligent and almost certainly a failure to train staff properly (this is by multiple staff over a 7-8 day period of time)  **ISSUE TWO:** I sent multiple kytes trying to address this issue with zero response, this is my only communication avenue and they intentionally ignore things they don't want to address. (again, multiple staff over a large period of time)  **ISSUE THREE:** The available Inspector general phone number that is supposed to help inmates in cases like this where rights are being abused never responded to my phone call ( I am not sure who is responsible for the returning of calls here?). **ISSUE FOUR:** I was subjected to very harsh treatment and profanity in direct violation of the signed code of ethics form CD 1382 and the code of conduct 20.1.3 from the Oregon Department of Corrections (this was by Sgt. Aly and Officer Bidwell and Hearings officer Joe Capps).    **ISSUE FIVE:** Officer Bidwell,

Hearings officer Joe Capps and Sgt. Aly all filed false reports directly saying or insinuating that I had "shat" in anger.


**Supporting Facts:**

**ISSUE ONE:** is pertaining to the intentional withholding of communication box numbers when in segregation. I have recorded dates/times on the numerous occasions during the segregation penalty for this incident that I asked for various box numbers and to speak to a superior officer. I was told just to put a name on a kyte and send it with no box number and it "will get there", even though this is known to not be true. Any kyte without a box number is returned and my kytes were returned and no assistance was given to find out how to contact someone from segregation. They know you will be out soon so they offer no help and in fact they give false information to keep you from attaining your goal. I have been in segregation now 3 times (found innocent on 2 of the incidents and this incident is the only one I was found guilty on) and each time they do the same thing... they keep any source of communication from the inmates as some sort of game I guess. When the segregation time was finished I needed to file an appeal of the decision to the "Functional Unit Manager" according to the inmate rights sheet. I asked multiple guards who that was and they all told me something different and never gave me a box number. I have the right to ask for a review and by not giving me information that I have no other way of getting then through a staff member, they are effectively withholding my right to file for review. I did eventually just send my review to the superintendent (Mark Nooth) and hoped that was good.

**ISSUE TWO:** To preserve the video evidence of this case (there are multiple cameras in the gym and one in the hallway where Sgt. Aly "arrested" me) I sent multiple kytes to various senior staff and never got a single reply. I have copies of the kytes and dates/times they were submitted. My only communication avenue for these types of situations is by using a kyte. I spoke in person to a Lieutenant and Sergeant and they both told me to kyte specific people, who never responded. I was told by Sgt. Garcia in DSU that video may be held for 30 days, but he was not sure and offered no other way of finding out because he was "stuck in DSU" and didn't make it out in the general population often. That is the only reply from all of the staff I asked and that was only because I caught him in person. This is not an isolated incident. I have multiple issues I am dealing with and they do the exact same thing when they don't want to deal with something... they just ignore it and my only avenue of recourse is ... nothing.

**ISSUE THREE:** On 08-30-15 at 2:20pm I placed a call to the Inspector Generals hotline to try to address the issues with no one returning my kytes, video evidence not being preserved, my hearing rights being flouted and another incident where I was assaulted because of this incident. I have a copy of the issues that I addressed written on paper. I never got a call back or anything addressed in any way from this phone call. This is supposed to be a safeguard for inmates, but not even they called me back.

**ISSUE FOUR:** During the time that Officer Bidwell and Sgt. Aly were berating me in front of other inmates for my medical incident (that could have been prevented entirely by Officer Bidwell not violating his Code of Conduct 20.1.3 rules and staying attentive to work) they violated their codes of conduct and ethics stating they will not use obscene, abusive or intimidating speech toward inmates, by humiliating me and cursing at me in front of other inmates. This serves no legitimate penological purpose and is against state rules and regulations. Hearings Office Joe Capps used intimidation to prevent me from speaking in my defense during the hearing. The audio recording will clearly show my stunned and reticent responses to being forced to forego my prepared statement and his intentional prevention of my ability to speak.

**ISSUE FIVE:** Officer Bidwell and Sgt Aly and Hearings Officer Joe Capps all filed false reports saying that I "shat" in anger, knowing (or should have known) that diarrhea does not occur as a result of anger but is in fact a medical condition. I had no history of any sort of disobedience and I should have been listened to when I said I had no control over the situation. There is no physical way I could conjure diarrhea as a tool of retribution for not being allowed the use of what I am sure is the mandatory provision of bathrooms in classroom areas. Even after I was found clearly innocent of having anger-"shat" I still had the insinuation placed on my disciplinary record by Officer Joe Capps, who was the one who found me innocent. False accusation still show in my record and were not blotted out, but perpetuated by guards even as late as November 2015, several months later (as noted toward the end of Claim 1).

These false accusations made their way into the general population and after I got out I had several "friends" who wouldn't talk to me and all the guards and inmates were pointing me out as the one "shit" in the gym on purpose. The rumor was that I pulled my shorts down and defecated directly on the floor in anger. This rumor stemmed from Officer Bidwell yelling essentially that, to the gym full of people, when in fact that did not happen. Clearly my shorts were on because they were filled with diarrhea and there was only a small drop left on the floor, less than an inch in diameter, because I cleaned it all up.

**Claim V**

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

First amendment violation of retaliation for a perceived intentional medical accident by Officer Bidwell and Sgt. Aly.

**Supporting Facts:**

I assert that the actions of Officer Bidwell in yelling about my condition and stopping to tell gang members of my condition rises to retaliation, protected under the first amendment. I assert that my medical condition is one subject to protection by the constitution and does not warrant the dispersal of such condition to other inmates, nor the attempt to bring retaliation on me due to it. It advances no legitimate penological goals to attempt to bring assault down on me due to my medical condition. As a result of this action by state employee Officer Bidwell, in direct retaliation for my medical accident, I was deprived of my right to privacy of medical conditions (which arose to an assault shortly thereafter) and the other rights described above in the various claims. I further assert that Sgt. Aly's actions of loudly proclaiming my condition and berating me in front of other inmates rises to the level of retaliation as it also brought about chilling effects on my constitutional rights as listed above. The listed actions by Sgt. Aly and Officer Bidwell had a chilling effect on my constitutional rights, via retaliation using other inmates for assault and humiliation against me.

**Claim VI**

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

Plaintiff's 14th Amendment rights to due process was violated by Officer Dotson, Mark Nooth, J. Taylor and Sgt. Garcia.

**Supporting Facts:**

I was deliberately subjected to a brutal attack that went well beyond the punishment handed down by the court, and this without a hearing to prescribe additional punishment. On 08/21/2015 I went to the dayroom in Complex 2 Unit C and sat in a seat to read a book. I was approached by an inmate who told me to cell-in or I would get hit with a board to my head. Immediately after this threat I went to the guard station and told Officer Dotson that I had been threatened with a board. Officer Dotson had little to no reaction except to ask who did it. I did not know where the guy who threatened me was and since I was new I had no idea WHO he was, so I went to sit back down in a spot with an unobstructed view for the officer... for my protection. I noticed Officer Dotson was doing nothing; I expected that he would be calling someone to have me reassigned or something; whatever protocol required. A couple minutes later I went back up and told him again of the attack and pointed out a group of guys that I thought the assailant might be hiding in... again, I had no idea what he looked like so I couldn't point him out directly. Farmer V. Brennan, the supreme court decision that makes the basis for many 8th Amendment claims, states that the assailant need not be known, as in a gang setting one person can threaten and another enact the threat; there need only be a legitimate threat of attack ... clearly in this case the threat was imminent and legitimate.

I am a member of a prison class that is "at-risk" already and, from an earlier incident on 08-03-15(Claim #'s 1-5) that involved people from this gang (the gang of the person who attacked me) who regularly extorts and assaults inmates of my class, I was placed at risk by the actions of an officer (Officer Bidwell) in front of this specific gang, the majority of the other inmates in this unit were from this gang... the threat of assault being legitimate should have been obvious to anyone with any knowledge of "prison politics".

Because of Officer Dotson's inaction I was then assaulted with no warning from Officer Dotson, while I read my book. Shortly after the second warning to Officer Dotson, the assailant went up to the officers station, took a board off the shelf directly in front of Officer Dotson (the board is about 3' long and the shelf is within about 4' of Officer Dotson who was at his desk .. this shelf is directly in front of the officer's station), the assailant traversed the room with the board in hand, snuck up behind me and with no warning from the guard, who had just been warned twice of the attack, the assailant struck me in the head with the board and proceeded to pummel me in the head with his fists whilst I made my way to the officers station for protection.

I had sat back down prior to the attack thinking that officer Dotson was taking action and that I was in full, unobstructed view of the guard station so I was safe, apparently I was mistaken.

As I made my way to the guard station the assailant continued to beat me in the head. By this point Officer Dotson started yelling "Stop fighting" … I replied that I was not fighting, which was obvious and I was never charged with fighting by Officer Dotson's own admission. Nonetheless, when I arrived at the guard station I, not the attacker, had 2 cans of pepper spray emptied onto my head and face by Officer Dotson, even though I was not fighting, while I was continuously being pummeled in the head. As I was being sprayed and beat in the head I kept saying "I am not fighting! Stop spraying me!" but the spray didn't stop until he ran out of spray. I had so much pepper spray on me the yellow color was condensed to red and the guards who escorted me to my 7 day stay in the hole were unsure whether I was bleeding or not, that's a very condensed concentration of pepper spray.

I then had to endure a time of wallowing in the pepper spray from Friday until Sunday because they did not give me sufficient tools to clean it off. I was given a towel but asked for another because the one I was given had been covered in spray. I still couldn't see well due to the pepper spray in my eyes by the time they took me to my segregation cell. I did not know I still had my entire head covered in spray or my arms. I was given no means of cleaning it off in my cell i.e… a towel or washcloth, until Sunday, the third day I was in the segregation unit. My sheet was covered in pepper spray because I laid down before I knew I was still covered. My pillow was covered as well. I asked for an additional sheet as well as a towel because I was only given 1 sheet, but they would not do it and I was in my pepper spray sheets from Friday to Tuesday. This situation was seemingly brushed under the rug. I sent multiple kytes to various staff asking for status updates on what was happening since no one ever came to speak to me about the incident at all. I even called the Inspector Generals number to try to get them to take action and preserve the video of the incident and they never even responded to my call. This is supposed to be a phone number that will help protect inmates from this sort of thing, yet I can't get a reply from any staff member about anything to do with this event. Superintendent Mark Nooth has not setup sufficient training or policies/directives to ensure safety in such circumstances, as is clear by the inaction of his staff to prevent an assault. Sgt. Garcia is culpable via his direct involvement in my placement in unit 2C where I was assaulted, even though I told him I was concerned for my safety in complexes 2 and 3. He changed my placement from complex 3 to complex 2 on the day of my move (8-10-15), but that was not sufficient as I

explained to him at the time. J. Taylor is culpable for his intentional and systematic delay of my grievance process in an attempt to get me to miss my 6 month Tort Claim Notice deadline, which is supposed to be filed AFTER the grievance process is done, but not more than 180 days after the event. He has held my grievance paperwork for months with no movement at all to the point where I had to file my notice prior to my grievances having been exhausted or I was going to miss my deadline to file Tort Claim notice as per ORS 30.275 (2) (b).

I assert that the deliberate indifference displayed in this case does not promote a legitimate correctional purpose and , in fact, thwarts the safety, security and smooth operation of the facility. In no way does allowing an inmate to get assaulted and then participating in the assault (Officer Dotson) with pepper spray on the attacked, rather than the attacker, and then the following treatment in DSU and lack of treatment in medical, promote further safety, security and smooth operation of the facility.

## Claim VII

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

8th amendment violation of deliberate indifference leading to cruel and unusual punishment by Officer Dotson, Mark Nooth and Sgt. Garcia

**Supporting Facts:**

The above description (claim 6)of the incident is the full description of what happened and shows the deliberate indifference standard clearly reached by **not reacting to my pleas for assistance prior to assault.** Superintendent Mark Nooth has not setup sufficient training or policies/directives to ensure safety in such circumstances, as is clear by the inaction of his staff to prevent an assault. Sgt. Garcia is culpable via his direct involvement in my placement in unit 2C where I was assaulted, even though I told him I was concerned for my safety in complexes 2 and 3. He changed my placement from complex 3 to complex 2 on the day of my move (8-10-15), but that was not sufficient as I explained to him at the time.

I assert that the deliberate indifference displayed in this case does not promote a legitimate correctional purpose and , in fact, thwarts the safety, security and smooth operation of the facility. In no way does allowing an inmate to get assaulted and then participating in the assault (Officer Dotson) with pepper spray on the attacked, rather than the attacker, and then the

following treatment in DSU and lack of treatment in medical, promote further safety, security and smooth operation of the facility.


## Claim VIII

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

14th amendment violation for placing me in a setting that would not allow me sufficiently safe fair and equal use of the facilities by Mark Nooth and whoever does the classification and room assignments. And Sgt. Garcia for my direct assignment to unit 2C

**Supporting Facts:**

There is a well known and pervasive overarching threat of violence to inmates with "sensitive charges" (from other inmates in various gangs) who choose to use the facility equally (i.e… if I try to use the tables in the dayroom or weights on the yard, or baseball field or basketball court if these other inmates are in the area etc…). This threat is obvious and well known by staff and inmates: if we (those with sensitive charges) come out into the dayroom we run the very real risk of being attacked. The staff does nothing about it, as is obvious by the inaction of Officer Dotson, and the fact that I keep getting put in units where I cannot use the tables or chairs without getting assaulted. This violates my right to fair and equal use of facilities by forcing me to choose between my safety and my right to equal use. This claim is substantiated by the facts in claims 6 and 7 that prove the security risk to those with "sensitive charges" when attempting to use facilities. Prior to my move to the unit I was assaulted in, I did ask Sgt. Garcia to not place me in Complex 2 or 3 as a previous incident (See claims 1-5) had put me at even greater risk of being attacked in those 2 complexes… but he put me in there anyhow. You cannot grieve inmate classification or placement so I have no recourse inter-facility to influence my placement more than just asking or informing of risks, those risks were ignored by Sgt. Garcia and I was placed in Complex 2 and almost instantly assaulted.

I assert that the deliberate indifference displayed in this case does not promote a legitimate correctional purpose and , in fact, thwarts the safety, security and smooth operation of

the facility. In no way does allowing an inmate to get assaulted and then participating in the assault (Officer Dotson) with pepper spray on the attacked, rather than the attacker, and then the following treatment in DSU and lack of treatment in medical, promote further safety, security and smooth operation of the facility.

### Claim IX

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

8th amendment right to be free from cruel and unusual punishment pertaining to the expectation of ODOC staff that I either forfeit my rights to fair and equal use of the facility, or get assaulted by inmates, I assert that responsibility for this action lies with management of the facility (Sgt.'s, LT.'s and above) and with those who assign inmates to housing units throughout facility.

**Supporting Facts:**

This claim is the 8th amendment portion of claim 8 of this filing and pertains to the ipso facto requirement that in order to get fair and equal use of the dayroom and exercise equipment I need to place myself in the way of grave harm. This fact is not hidden. In 95% of the units in the facility all people with "sensitive charges" or not in a gang or ethnic group, have to stay in their cells. When I ventured out of my cell in unwitting defiance of the "rules", that are allowed by staff due to inaction in the clear face of injustice, I was attacked on the first day. I have been placed in unit after unit where I have yet to be able to use a table or the weight set without getting attacked. This attack on me is a prime example of exactly what happens if you go outside of the accepted norm. Staff could not possibly be unaware that not a single sex-offender ever sits at a table outside of honors units, unit 2H and complex 1. Honors units and Complex 1 have minimum requirements to reside there, which means I still do not have access, even though I have requested to go there multiple times. It is not a stretch to say that the facility should be arranged such that all people can enjoy fair and equal use of the recreation options without the certainty of retaliation.

The staff are clearly not addressing this issue and that makes them guilty of culpable negligence or deliberate indifference for not stopping a pervasive injustice when it is clearly known, longstanding in stature and violent in nature. Although the assault for my use of recreation areas need not come to fruit to draw an eighth amendment claim (Farmer v Brennan), in my case it did come to fruit and since then I have not chosen to get assaulted and am forced to

hide in my room when not eating or at a remote call-out. This is a choice endorsed by non-action from staff to properly house inmates.

I assert that the deliberate indifference displayed in this case does not promote a legitimate correctional purpose and , in fact, thwarts the safety, security and smooth operation of the facility. In no way does allowing an inmate to get assaulted and then participating in the assault (Officer Dotson) with pepper spray on the attacked, rather than the attacker, and then the following treatment in DSU and lack of treatment in medical, promote further safety, security and smooth operation of the facility.


## Claim X

State what right under the Constitution, Laws, or Treaties of the United States of  has been violated.

8th amendment right to be free from cruel and unusual punishment  via use of excessive force in the application of 2 cans of pepper spray to my face, head and arms by Officer Dotson and Mark Nooth for insufficient training on use of pepper spray.

### Supporting Facts:

As stated in claim 6,  I went to the guards station during my assault trying to find protection from my assailant and instead Officer Dotson sprayed me with 2 cans of pepper spray and yelled at me even though I was, **by admission of Officer Dotson**, not fighting at all. The assailant got no pepper spray on him, it was all directed specifically on my face and head. This was all within 5 minutes of me telling him I was going to be assaulted… he knew it was coming and still chose to assault me while I was being beat in the head by the gang member. I don't know if it was for his safety against retaliation from the gangs, but I see no legitimate penological purpose for spraying a person who, by your own admission, is not fighting and is repeating over and over "I'm not fighting, stop spraying me!". This is a case of excessive force being used against me.

I assert that the deliberate indifference displayed in this case does not promote a legitimate correctional purpose and , in fact, thwarts the safety, security and smooth operation of the facility. In no way does allowing an inmate to get assaulted and then participating in the assault (Officer Dotson) with pepper spray on the attacked, rather than the attacker, and then the

following treatment in DSU and lack of treatment in medical, promote further safety, security and smooth operation of the facility.

**Claim XI**

State what right under the Constitution, Laws, or Treaties of the United States of  has been violated.

8th amendment right to be free from cruel and unusual punishment  via not being allowed by DSU staff to properly wash off pepper spray until the third day (plus more explained below)

**Supporting Facts:**

After I was pepper sprayed I was brought to segregation (DSU) and I was still so covered in pepper spray from the assault by Officer Dotson, that the guards who brought me down could not tell me if I was bleeding or not because of the thickness of the yellow spray had turned red. When I arrived in DSU the officers did provide me with 1 wet towel. I used the towel sufficiently that it was covered in pepper spray and lost it's effect. I then got a second towel and still I could not open my eyes because there was so much on me. I was placed in a temporary holding cell while they classified me and figured out a room to segregate me in.  Within that time in the temporary room I was able to open my eyes but not see well so I asked for another towel. I was told to hold on a second, then in about 5 minutes, without another towel, I was led to my cell. I was given no towel and only 1 sheet. There are no mirrors in DSU so I had no idea I was still covered with pepper spray because I hurt everywhere from being beaten and pepper sprayed. So I lay on my single sheet (with broken ribs) and only the next day did I see that I had rubbed pepper spray all over my single sheet. I asked on Friday (08-21-15) for a towel and my other sheet, and also on Saturday (08-22-15) I asked for a towel and sheet. I was told I needed to wait until showers on Sunday. I informed them that I hadn't even fought and I was assaulted unilaterally and I did not deserve to be punished by forcing me to remain in pepper spray for several days…I got no help. I was then forced to lay on a sheet full of pepper spray until Tuesday when we got our new sheets. I am claiming that these circumstances were deliberate and certainly indifferent to my suffering. It certainly was not by accident that they saw my arms and hair covered with pepper spray for 3 different days and did not allow me to wash it off, and in fact suggested that I clean it off with the towel in my cell, which I told them I did not have.

I assert that the deliberate indifference displayed in this case does not promote a legitimate correctional purpose and , in fact, thwarts the safety and safety, security and smooth operation of the facility. In no way does allowing an inmate to get assaulted and then participating in the assault (Officer Dotson) with pepper spray on the attacked, rather than the attacker, and then the following treatment in DSU and lack of treatment in medical, promote further safety, security and smooth operation of the facility.

## Claim XII

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

My 8th amendment right to be free from cruel and unusual punishment      pertaining to the lack of sufficient medical care relating to my injuries. Dr. Gulick was the medical doctor who saw me and denied me chiropractic and J. Taylor is the grievance coordinator who denied me chiropractic that was requested with my grievances and Lt. Parks and J. Gilmore for denying my grievance appeal where I asked again for chiropractic care.

### Supporting Facts:

I have asked for chiropractic care since just after the attack and I have been denied. My neck and back need adjustment badly. I was sitting relaxed, reading my book in a chair (being guarded, or so I thought) and I was struck in the head with a shelf, swung by a big guy, like a baseball bat. That sort of thing will throw a neck out and I have repeatedly asked for chiropractic care and been denied. In each of my grievances and a couple medical visits I have brought up the issue, but to no avail. I am aware that ODOC does not provide chiropractic care, but I also don't normally get batted in the head with a piece of wood; sometimes extraordinary circumstances require extraordinary measures. I contest that this is cruel and unusual to allow me to get assaulted and then not at least repair the problem. I am also suffering anxiety when loud things occur, like flushing the toilet, or chairs sliding in the chow hall. Even seeing people get angry causes me great anxiety and I told the counselor about it and was basically told "sorry".

I don't know what normal procedures would be for such a situation, but maybe follow-up visits or something? I also believe that this lack of medical care is not by accident, but deliberate to save money on having to hire a chiropractor. They allowed me to get assaulted, they should pay to get it fixed… not doing so shows deliberate indifference to my pain and suffering obtained during the assault.

I assert that the deliberate indifference displayed in this case does not promote a legitimate correctional purpose and , in fact, thwarts the safety, security and smooth operation of the facility. In no way does allowing an inmate to get assaulted and then participating in the assault (Officer Dotson) with pepper spray on the attacked, rather than the attacker, and then the following treatment in DSU and lack of treatment in medical, promote further safety, security and smooth operation of the facility.

### Claim XIII

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

Using pendent jurisdiction I would like to address the intentional delays on processing the grievances for these civil rights claims #'s 6-13, and the equitable tolling on the unlawful segregation, Spoliation of evidence in the failure to retain video, and failure to secure possible weapons in a living unit … I am pro se and do not know how to properly write these additional concerns up so I am almost certainly doing this part wrong, hoping I can get an attorney to assist me; assigned by the government.

**Supporting Facts:**

According to the grievance response form I received from J. Taylor regarding the assault portion of this claim (claim #'s 6-13), the institution has 45 days to respond to a grievance or they will contact the inmate and explain the reason for the delay. I filed my original grievance on 8/29/2015 and did not get a reply until I sent several kytes to staff, filed my first and second appeals and finally complained to the superintendent … I got my reply on 12/22/2015, almost 4 months later. So I rewrote my appeal and sent it in. I got the letter saying they are processing it but they never sent me back the original. They did the same thing on another grievance of mine for the pepper spray portion of this filing (claim 10) … then when I tried to appeal they said that I did not send them the originals and that I could not appeal. Clearly they are trying to avoid prosecution and delay as much as possible. I have put in multiple kytes asking to speak to someone about the status on the investigation on this case, to see the video and to find out what the next step is in the "assault with a weapon" case I was thrust in by this attack. I have never gotten a reply: I have copies of each kyte.

In addition I was unlawfully segregated for 7 days even though Office Dotson said right away that I had not participated in the unilateral attack. I was never spoken to about what happened

and still to this date (I am writing this on 1-05-2016) I have had no one speak to me about the incident except the grievance counselor who wanted to see if I could solve this without going through all of this mess (filing a lawsuit). I have, since the very beginning, asked repeatedly to have the video from the unit preserved, I was told by a sergeant (who asked me not to quote him) that video was held for maybe 30 days. I have sent kyte after kyte asking to see and preserve the evidence and never got a reply except to say "it's not my job." This is spoliation of evidence and a clear attempt to avoid a lawsuit. As far as the "securing a weapon" goes, the guy who attacked me grabbed a loose shelf board from in front of the officers station and batted me in the head with it. This sort of convenient weapon should most certainly have been secured.

Again, if this last claim is not properly structured, I request time to correct it – hopefully with the assistance of supplied counsel.

It is clear that none of the above complaints in Claim XIII serve a legitimate correctional purpose or further the safety, security and smooth operation of the facility.

### Claim XIV

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

My 1st Amendment right to Freedom of association was taken by Mark Nooth, Jose Delgado, M. Jones and LT. Parks. via the unlawful restriction of my association with a person outside of the prison

### Supporting Facts:

On 7-22-2015 Counselor Jose Delgado received a phone call from my ex-wife where she complained that I was harassing her with letters; she was asked to supply those letters, which, to my knowledge, she never did, and without such proof or any reason at all he unilaterally restricted my right to associate with a person for whom no restrictions were in place. He placed in my file a "Direct Order" that I be not able to communicate with her either directly or indirectly, and this without hearing or proof of harassment. In fact I did not harass her in any way and that is why she could not produce letters indicating that I did. My ex-wife is living in a house owned exclusively by me and has my dog and all of my personal belongings at my house. As such I needed to get an update about when the house was going back to the bank and where my dog was going to go, so on 11-10-2015 I sent her an innocuous letter asking about such details. I

was aware of the direct order in my file and I was also aware that it (the direct order) was a violation of my civil rights, so I sent the letter anyhow. She complained again and this time, since the letter did not indicate things like her giving illicit drugs to my kids and other illegal activities I heard she was doing (as my first letter did), she decided to send the letter in to the counselor.

I was issued a misconduct report and found guilty of a major violation (Disobedience of an order) and restricted to segregation in my cell for a period of time due to writing a letter that I was legally and constitutionally allowed to write. I have asked for the direct order to be reviewed and removed from my file , along with the misconduct ruling: to no avail. Counselor M. Jones was the one who wrote up the misconduct report, Counselor Delgado gave the aberrant "Direct Order", Lt. Parks signed the Misconduct report and has thus far refused to respond to my request for a formal review of the incident and the order in general and Mark Nooth is the superintendent and I assert that he has insufficiently trained his staff to handle matters of this nature within the confines of the constitution. I know of 3 others with similar "Direct Orders" without a hearing and with no proof of harassment.

I assert that the unilateral and unwarranted chilling of my rights served no legitimate correctional purpose as there was zero proof of any harassment. I do believe that a prisoner could easily fall into a state of harassing someone on the outside if not careful and such cases do warrant restrictions -- with a hearing -- but my case was not such a case. I had no harassment and no proof and no hearing; the response was unwarranted and did not advance the safety, security and smooth operation of the facility. The refusal by Mark Nooth and LT. Parks to correct this matter shows that it was not an oversight, but blatant and deliberate.

## Claim XV

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

My 1st amendment rights were violated by Mark Nooth, Jose Delgado, M. Jones and LT. Parks in regards to the chilling of my first amendment right to free speech

**Supporting Facts:**

The above description (claim 14)of the incident is the full description of what happened and shows the removal of my first amendment rights to freedom of association and the chilling of my

right to free speech by the defendants. I am in fear of further reprisals by the state if I was to contact her in regards to any of the business matters needing to be dealt with due to my incarceration. My right to free speech cannot be chilled without reason and a hearing with proof etc…

I assert that the unilateral and unwarranted chilling of my rights served no legitimate correctional purpose as there was zero proof of any harassment. I do believe that a prisoner could easily fall into a state of harassing someone on the outside if not careful and such cases do warrant restrictions -- with a hearing – but my case was not such a case. I had no harassment and no proof and no hearing; the response was unwarranted and did not advance the safety, security and smooth operation of the facility. The refusal to correct this matter shows that it was not an oversight, but blatant and deliberate.

## Claim XVI

State what right under the Constitution, Laws, or Treaties of the United States of has been violated.

14th amendment violation for removing my constitutional rights (claims 14 and 15) without a hearing or any sort of due process.

### Supporting Facts:

The above description (claim 14)of the incident is the full description of what happened and shows the removal of my first amendment rights to freedom of association and the chilling of my right to free speech by the defendants without the due process which is afforded me by the constitution. This is serious due to the fact that it is widespread and blatant. They do it knowing that only a small number of people will know to complain and even fewer will follow through on it due to the threat of reprisal in what they call "Diesel Therapy" (which is when they keep moving people from place to place, never letting them get set-up enough to be comfortable). I feel that this sort of simple and blatant disregard for rights being obviously violated shows the audacity and boldness of an administration gone overzealous with authority. I feel punitive damages are the only way that they will stop this (and many other practices) that are clearly against the constitution and degregate rights purchased for all Americans through many wars and many lives. A fine of $5000 (as a purely random example of a small award) is going to do nothing to stop the State's refusal to recognize and respect human rights as afforded by the

constitution. I am not interested in money myself and all proceeds will go to a children's charity to attempt, in some small way, to make up for what I did in my crime.

Regardless of whether the outcome is punitive or actual damages, my right to free speech cannot be chilled without reason and a hearing with proof etc…

I assert that the unilateral and unwarranted chilling of my rights served no legitimate correctional purpose as there was zero proof of any harassment. I do believe that a prisoner could easily fall into a state of harassing someone on the outside if not careful and such cases do warrant restrictions – with a hearing – but my case was not such a case. I had no harassment and no proof and no hearing; the response was unwarranted and did not advance safety, security and smooth operation of the facility. The refusal to correct this matter shows that it was not an oversight, but blatant and deliberate.

## V.  RELIEF

*State briefly exactly the relief you are seeking.  Make no legal arguments.  Cite no cases or statutes.*

On Claim 1 I am seeking $12,000,000

On Claim 2 I am seeking $5,000,000

On Claim 3 I am seeking $10,000,000

On Claim 4 I am seeking $2,500,000

On Claim 5 I am seeking $2,500,000

On Claim 6: I am seeking $5,000,000

On Claim 7: I am seeking $15,000,000

On Claim 8: I am seeking $5,000,000

On Claim 9: I am seeking $5,000,000

On Claim 10: I am seeking $5,000,000

On Claim 11: I am seeking $3,000,000

On Claim 12: I am seeking $2,000,000

On Claim 13: I am seeking $1,000,000

On Claim 14 I am seeking $1,000,000

On Claim 15 I am seeking $1,000,000

On Claim 16 I am seeking $1,000,000

Filing fees paid by State.

Totaling                $76,000,000 +filing fees

I also pray that the facility be forced to provide restrooms in the gym area. There are 2 there, 1 could be used for inmates, or use the one across the hallway.

I also pray that my disciplinary record would be fully expunged and a decision of not guilty be recorded pertaining to the incidents involved in these claims.

I am not interested personally in money and 90-95% of all awards will go to form a 501c3 charitable organization that helps kids. This lawsuit is not to "line my personal pockets", but to prevent the state from the daily blatant abuses that go unpunished due to technicalities and disinformation. Without an amount that actually matters to the state there will never be action taken to reform officers who are in a union that will not allow significant punishment and that encourages, by non-substantive-action, poor performance and abuse of the system. I am not a conspiracy theorist type and I acknowledge the presence of many wonderful Officers in the ODOC system, but the abusing officers are not dealt with and my hope is this lawsuit will cause Oregon to look at that policy and hold the unions accountable for their people.

Signed this the _7_ day of _June_ , 20 _16_ .

Brian Jeremiah
SID# 11464377
Snake River Correctional Institution
777 Stanton Blvd
Ontario, Oregon  97914
541-881-5000

FILED 13 JUN '16 11:39 USDC-ORP

## CERTIFICATE OF SERVICE

**CASE NAME:** <u>BRIAN A. JEREMIAH</u>   v. <u>MARK NOOTH Superintendent SRCI,</u>
<u>Rec Specialist BIDWELL, SGT. ALY, Hearings Officer JOE CAPPS, Officer DOTSON</u>
<u>SRCI, John/Jane Doe / officers on duty in DSU on 08-21-15 at 9:45pm- 10:30pm, and/or 08-</u>
<u>22-15 in the housing unit I was in at SRCI, Sgt. Garcia SRCI, Grievance Coordinator J.</u>
<u>Taylor, John and Jane Doe, that was/were acting as assignment coordinator on 8-10-15</u>
<u>Lt. PARKS SRCI, J. GILMORE   SRCI, Counselor J. DELGADO   SRCI, Counselor M.</u>
<u>JONES SRCI, Lt. PARKS SRCI, Management of the facility (Sgt.'s, LT.'s and above) and</u>
<u>with those who assign inmates to housing units throughout facility,</u>

BW initials

**CASE NUMBER:** (if known) 2:16-0CV-00532-TC

        COMES NOW, <u>Brian A. Jeremiah</u>, certifies the following:

That I am incarcerated by the Oregon Department of Corrections at Snake River Correctional Institution.

        That on the 2nd day of ___June___, 20 16 , I personally placed in the Correctional Institution's mailing service A TRUE COPY of the following to each party:

<u>1 Original, and 2 Copies of Petitioners Petition, 1 Informa Pauperis, 1 Motion to appoint</u>
<u>Counsel, 1 Motion to Waive Fees, 1 Civil Cover Sheet, 1 Certificate of Document preparation, 1</u>
<u>consent to jurisdiction, 1 Civil Summons w/ Service and 1 Certificate of Service, 1</u>
<u>Declaration</u>

United States District Court
    District of Oregon
740 U.S Courthouse,
1000 SW Third Avenue
Portland, Oregon  97204-2902

Brian A. Jeremiah   Pro Se'
Sid #  11464377
Snake River Correctional Institution
777 Stanton Blvd
Ontario, Oregon  97914
541-881-5000

FILED 13 JUN '16 11:39USDC-ORP

## CERTIFICATE OF DOCUMENT PREPARATION

Pursuant to UTCR 2.010(7)

Check all boxes that apply:

I hereby certify that the following is true:

☒  I selected this document for myself, and I completed it without paid assistance.

☒  I requested help from an inmate legal assistant who *is not an Attorney in the State of Oregon*, to assist me in the preparation of this document at Snake River Correctional Institution at 777 Stanton Blvd Ontario, Oregon 97914.

☐  I paid or will pay money to _____ for assistance in preparing the document(s) / form(s).

Dated this the _7_ day of _June_ , 20 _16_ .

Brian A. Jeremiah      Pro Se'
Sid # 11464377
Snake River Correctional Institution
777 Stanton Blvd
Ontario, Oregon  97914
541-881-5000