UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BRIAN A. JEREMIAH,

Plaintiff,

v.

MARK NOOTH, Superintendent, SRCI;
et al.,

Defendants.

Case No. 2:16-cv-00532-TC

FINDINGS AND
RECOMMENDATION

COFFIN, Magistrate Judge:

Plaintiff, an inmate at the Snake River Correctional Institution (SRCI), brought this action pursuant to 42 U.S.C. § 1983 and alleged various violations of his constitutional rights. Defendants now move for summary judgment on all claims. For the reasons explained below, defendants' motion should be granted.

## BACKGROUND

Plaintiff's claims arise from three separate incidents at SRCI. Claims 1 through 5 pertain to an incident on August 3, 2015. On that day, plaintiff was in the common gym area and began to feel gastrointestinal discomfort. He asked Officer Bidwell if he could use a bathroom in the

1 - FINDINGS AND RECOMMENDATION

gym. Officer Bidwell responded that those particular bathrooms were reserved for staff and told plaintiff to return to his cell to use the bathroom. Plaintiff declined to do so and remained in the gym. Several minutes later, plaintiff experienced an episode of uncontrollable and noticeable diarrhea, with feces running down his legs and onto the floor. Officer Bidwell saw plaintiff and loudly declared, in front of other inmates and prison gang members, that plaintiff had "shit" in the gym. Plaintiff asked if he could clean up in a bathroom across the hall. Officer Bidwell indicated that the hall bathroom was occupied and told plaintiff to return to his cell. Plaintiff did not do so; instead, he waited for the hall bathroom to become unoccupied and entered it just as he experienced a second episode of diarrhea. After plaintiff exited the bathroom, Sgt. Aly allegedly asked him why he had "shit" all over the gym and escorted plaintiff to segregated housing. Am. Compl. at 3-14 (ECF No. 9).

Plaintiff was charged with misconduct for failing to follow Officer Bidwell's order to return to his cell. After a disciplinary hearing on August 10, 2015, plaintiff was found guilty of disobeying an order and received seven days in disciplinary segregation and seven days' loss of privileges. Pl.'s Response to MSJ, Ex. D (ECF No. 47-1 at 6).

Claims 6 through 13 relate to an incident that occurred on August 21, 2015. On that day, plaintiff went to the prison dayroom to read a book. A fellow inmate threatened to hit plaintiff on the head with a board if plaintiff did not return to his cell. Plaintiff immediately informed Officer Dotson, who asked plaintiff who had threatened him. Plaintiff did not know and returned to his dayroom seat. After a few minutes, plaintiff again informed Officer Dotson of the threat and identified a group of inmates that could have included his potential assailant. Plaintiff then returned to his seat in the dayroom and resumed reading. A short time later, an inmate took a board from a shelf and struck plaintiff with the board and with his fists. As plaintiff attempted to

2 - FINDINGS AND RECOMMENDATION

flee to the guard station, Officer Dotson told plaintiff and his assailant to "stop fighting" and sprayed them with pepper spray. Plaintiff was returned to his cell and given a wet towel to remove the pepper spray. Plaintiff was not allowed to shower until his next shower rotation two days later. Am. Compl. at 15-24.

Claims 14 through 16 relate to a July 2015 order directing plaintiff to cease sending letters to his ex-wife after she complained that plaintiff was harassing her. Plaintiff sent his ex-wife another letter several months later, because he believed that the order "was a violation of [his] civil rights." Am Compl. at 25. After his ex-wife notified SRCI officials, plaintiff was issued a misconduct report and found guilty of violating the order.

## DISCUSSION

Defendants argue that Claims 2, 4, and 13 fail to state a claim, Claims 6 and 7 lack merit, and the remaining claims are barred for failure to exhaust administrative remedies. To prevail on their motion for summary judgment, defendants must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) ("If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."). The court must construe the evidence and draw all reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

A. Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), inmates must exhaust all available administrative remedies before filing a court action to redress prison conditions or incidents. 42 U.S.C § 1997e(a). The exhaustion requirement is mandatory and requires compliance with both

3   - FINDINGS AND RECOMMENDATION

procedural and substantive elements of the prison grievance processes. *Woodford v. Ngo,* 548 U.S. 81, 85, 90 (2006). Inmates must complete the administrative review process and comply with all applicable procedural rules by appealing a grievance decision to the highest level before filing suit. *Id.*; *McKinney v. Carey,* 311 F.3d 1198, 1199-1200 (9th Cir. 2002) (per curiam). The PLRA does not require exhaustion when administrative remedies are "effectively unavailable." *Sapp v. Kimbrell,* 623 F.3d 813, 822 (9th Cir. 2010*)*; *Brown v. Valoff,* 422 F.3d 926, 937 (9th Cir. 2005) (an administrative remedy must be available "as a practical matter"). Once the defendant shows that the inmate did not exhaust an available administrative remedy, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino,* 747 F.3d at 1172.

The Oregon Department of Corrections (ODOC) employs a three-step grievance and appeal process. Or. Admin. R. 291-109-0140(1). Inmates may file grievances for a variety of issues, including "unprofessional behavior or action which may be directed toward an inmate by an employee" or an "oversight or error affecting an inmate." *See id.* 291-109-0140(2)(c),(d). Generally, the inmate must file a grievance within 30 days of the alleged condition or incident. *Id.* 291-109-0150(2). If a grievance is returned on procedural grounds, the inmate may resubmit the grievance within 14 days if the procedural errors can be corrected. *Id.* 291-109-0160(5). If a grievance is accepted, the inmate may appeal the response within 14 calendar days from the date the response was sent to the inmate. *Id.* 291-109-0170(1)(b). As with grievances, appeals returned for procedural reasons may not be appealed further but may be resubmitted after correction of the procedural errors. *Id.* 291-109-0170(1)(c),(2)(d). If an appeal is denied, the inmate may file a second appeal within 14 days of the date the denial was sent to the inmate. *Id.*

291-109-0170(2)(c). A decision following a second appeal is final and not subject to further review. *Id.* 291-109-0170(2)(f).

### 1. Claims 1, 3 and 5

In Claims 1 and 3, plaintiff alleges that Officer Bidwell and Sgt. Aly violated his "14th Amendment right to privacy (medical issue privacy)" and Eighth Amendment rights when they announced that plaintiff had "shit" in the gym and Officer Bidwell ordered him to return to his cell with diarrhea running down his legs. Am. Compl. at 3-6, 8-9. In Claim 5, plaintiff alleges "First amendment violation of retaliation for a perceived intentional medical accident by Officer Bidwell and Sgt. Aly" based on the same actions. *Id.* at 14.

Plaintiff attempted to grieve several issues relating to the gym incident. In Grievance SRCI_2015_08_085, plaintiff complained that Officer Bidwell "blatantly disregarded my medical privacy, tried to incite violence against me (and-or ridicule), was not paying attention to his job while on the phone in the back room, he ordered me to walk down the hall with dripping diarrhea coming out of my shorts." Taylor Decl. Att. 5 at 2 (ECF No. 41). Plaintiff also referenced his disciplinary hearing for disregarding Officer Bidwell's order, and the grievance was construed as an attempt to grieve a non-grievable misconduct order. *See* Or. Admin R. 291-109-0140(3)(e) (an inmate may not grieve "[m]isconduct reports, investigations leading to or arising from misconduct reports, or disciplinary hearings, findings and sanctions"). Consequently, plaintiff received a response stating that the grievance was being returned for non-compliance with the relevant rules because it pertained to a misconduct report. Taylor Decl. Att. 5 at 1. Based on this response, plaintiff argues that the grievance process was not available.

"[A]an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct.

5 - FINDINGS AND RECOMMENDATION

1850, 1859 (2016) (citation omitted). In *Ross*, the Supreme Court enumerated three instances where a grievance procedure, for practical purposes, is unavailable: 1) when the process operates as a "simple dead end" with no actual possibility of relief to prisoners; 2) when the process is so opaque or confusing that it is "essentially 'unknowable' – so that no ordinary prisoner can make sense of what it demands"; and 3) when prison officials "thwart" inmates from using the process "through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Here, the response to Grievance SRCI_2015_08_085 did not invite plaintiff to submit a corrected or revised grievance or otherwise suggest that the grievance process was available. Taylor Decl. Att. 5 at 1. Therefore, it is arguable that the grievance process was not available to plaintiff regarding these claims. *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (per curiam) (administrative remedies may be effectively unavailable where the prisoner is informed that he is not permitted to appeal a decision). Regardless, these claims lack merit.

In his amended complaint, plaintiff alleged that after the "diarrhea ran down from [his] shorts all over [his] legs and some on the floor," he "tried to wipe [his] legs off but to no avail," and Officer Bidwell "came out of his little room…to a guy with diarrhea all over his legs." Am. Compl. at 10 (ellipses in original). Given that plaintiff had an admittedly visible episode of diarrhea in a common area of the prison, Officer Bidwell and Sgt. Aly did not violate plaintiff's privacy or exhibit deliberate indifference to his health or safety by announcing what others could plainly observe.[1] *See Bell v. Wolfish*, 441 U.S. 520, 537 (1979) (stating that the loss of privacy is an "inherent incident[ ] of confinement."); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir.

---

[1] In his response to defendants' motion, plaintiff asserts that he "cleaned the area very discreetly and sequestered himself around the corner in the office. Even if anyone had seen the very small dot of feces left on the ground, there would be no way to identify the owner of said feces." Pl.'s Response at 8. Given plaintiff's prior allegations and the photographic evidence provided by defendants, I do not accept plaintiff's renewed version of facts. *See* Second Taylor Decl. Ex. 2 (ECF No. 53).

6  - FINDINGS AND RECOMMENDATION

2010) (an Eighth Amendment claim requires a showing of deliberate indifference to a substantial risk of harm to an inmate's health or safety).

Further, plaintiff alleges no adverse action taken by defendants because of conduct protected by the First Amendment. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (a "viable" First Amendment retaliation claim requires a showing that a state actor took adverse action against an inmate because of the inmate's protected conduct). Plaintiff's isolated "medical condition" of uncontrolled diarrhea is not protected conduct for purposes of a First Amendment retaliation claim. Therefore, summary judgment should be granted on Claims 1, 3, and 5.

2. Claims 8 and 9

In Claims 8 and 9, plaintiff alleges violations of his Eighth and Fourteenth Amendment rights based on defendants' alleged failure to accommodate the "safe and equal use" of prison facilities by inmates with sex offense convictions. Am. Compl. at 18-19.

In Grievance SRCI_2015_09_173, plaintiff complained that he was prevented from going to the "yard" to exercise after telling Sgt. Aly that he might get attacked. Taylor Decl. Att. 9 at 2. Plaintiff also complained that he was transferred to a "more dangerous" housing unit and that an unidentified officer "spoke loudly" about plaintiff's safety concerns in front of numerous inmates. *Id.* Plaintiff's grievance was returned because it raised several issues and did not identify all of the officers allegedly involved. *Id.* Att. 9 at 1. Plaintiff did not submit a corrected grievance.

In Grievance SRCI_2016_01_060, plaintiff requested safe housing for him and similarly-situated inmates and complained that he could not use the yard, "except for a couple of spots," without the threat of assault from fellow inmates. Taylor Decl. Att. 10 at 2. This grievance also was returned for grieving more than one incident or decision involving numerous officers. *Id.*

7 - FINDINGS AND RECOMMENDATION

Att. 10 at 1. Plaintiff did not file a corrected grievance. Therefore, these claims were not exhausted and summary judgment should be granted.

### 3. Claims 6 (in part), 10 and 11

In Claim 6, plaintiff alleges that his substantive due process rights were violated by Offcer Dotson's failure to protect him before the assault on August 21, 2015, and by the lack of attention to plaintiff's condition afterward. Am. Compl. at 14-17. In Claims 10 and 11, plaintiff alleges Officer Dotson and SRCI staff violated his Eighth Amendment rights to be free from cruel and unusual punishment by pepper spraying him and not allowing him to wash off the pepper spray. *Id.* at 20-21. Defendants argue that plaintiff did not exhaust any of these claims except Officer Dotson's alleged failure to protect.

In Grievance SRCI_2015_09_029, plaintiff complained about Officer Dotson's failure to protect plaintiff before the attack and his subsequent use of pepper spray. Taylor Decl. Att. 7 at 14. The grievance was returned for corrections. *Id.* at Att. 7 at 13. Plaintiff submitted a revised grievance and complained that Officer Dotson took no action to prevent the attack; plaintiff did not mention the use of pepper spray. *Id.* Att. 7 at 12. Accordingly, plaintiff did not exhaust his claim regarding Officer Dotson's use of pepper spray.[2]

In Grievance SRCI_2015_09_080, plaintiff complained about the decontamination policy regarding pepper spray and alleged that he did not receive "decontamination showers" after being pepper sprayed. *Id.* Att. 8 at 8. Lt. Parks responded, noting that plaintiff was given a wet towel, soap, and clean clothing, and that showers generally are not provided after pepper spray. *Id.* Att. 8 at 6. Plaintiff appealed the denial of the grievance and stated that he had been denied a second towel, replacement bedding, and a shower. *Id.* Att. 8 at 5. The acting superintendent

---

[2] Even if plaintiff's grievance appeals could be construed to include Officer Dotson's use of pepper spray, this claim fails on the merits. *See infra* at 13-14.

8 - FINDINGS AND RECOMMENDATION

denied plaintiff's first appeal and plaintiff filed a second appeal. *Id.* Att. 8 at 2-3. Plaintiff's second appeal was returned for corrections based on plaintiff's failure to attach his original grievance and the expanded scope of his appeal. *Id.* Att. 8 at 1. After plaintiff complained that his original grievance was not returned to him, he was informed that his appeal would be reviewed. Pl.'s Response, Ex. F at 3-5 (ECF No. 47-1).

Plaintiff's second appeal was accepted on January 7, 2016 and, by his own admission, plaintiff did not receive a response to his second appeal before he filed suit. Pl.'s Response at 16, 19. It is well established that a prisoner must complete the grievance process before filing suit and that the relevant statute of limitations is tolled until the process is complete. *Brown,* 422 F.3d at 943 (stating that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process"); *McKinney,* 311 F.3d at 1199. Therefore, plaintiff failed to exhaust these claims and summary judgment should be granted.

### 4. Claim 12

In Claim 12, plaintiff alleges that he was denied chiropractic care for injuries sustained during his assault. Plaintiff did not submit a medical grievance regarding the denial of care during the relevant time period. *See* Taylor Decl. Plaintiff concedes this claim is subject to dismissal, and summary judgment should be granted on this claim.

### 5. Claims 14, 15, and 16

In Claims 14 through 16, plaintiff alleges that his First Amendment and due process rights were violated by the order prohibiting plaintiff from communicating with his ex-wife. Am Compl. at 24-26.

Plaintiff concedes that he did not attempt to grieve the mail restriction order before he sent his ex-wife another letter and received a misconduct sanction. He nonetheless argues that no

9    - FINDINGS AND RECOMMENDATION

administrative remedy was available under Or. Admin. R. 291-131-0021. This rule provides that ODOC "may prohibit an inmate from sending unwanted mail to a particular person" when requested; and that an ODOC "manager or designee will notify the person requesting the outgoing mail restriction of his/her decision. The decision will be final and will not be subject to administrative review." *Id.* 291-131-0021(1),(3). Thus, plaintiff maintains that no administrative remedy was available to appeal the outgoing mail restriction against him.

However, the lack of administrative review under Rule 291-131-0021 does not render the general grievance process unavailable. The rule governing ODOC's grievance process excludes "[i]ncidents or actions for which there exists a separate or internal department appeal or review process." *Id.* 291-109-0140(3)(b). No internal administrative remedy exists for an outgoing mail restriction, and defendants maintain that such a restriction may be grieved through the general grievance process. This Court has agreed, finding that "the only reasonable interpretation of the regulations is that an inmate must grieve an outgoing mail restriction through ODOC's Inmate Communication and Grievance Review System." *Crum v. Beal*, No. 6:16-cv-00600-HZ, 2017 WL 1946314, at *4 (D. Or. May 8, 2017).

Further, plaintiff does not contend that the interplay between Rules 291-109-0140(3)(b) and 291-131-0021 is so confusing that it makes the availability of the general grievance process "essentially unknowable" as a practical matter. *See Ross*, 136 S. Ct. at 1859 ("an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"). In fact, plaintiff admits that he "decided to fight the no-contact order only after he was disciplined with a major disciplinary order" and maintains that the misconduct order prevented him from exhausting his remedies. Pl.'s Response at 17; Or. Admin. R. 291-109-

10 - FINDINGS AND RECOMMENDATION

0140(3)(e). In other words, plaintiff's own actions rendered the grievance process unavailable to him. Accordingly, plaintiff failed to exhaust his administrative remedies on Claims 14 through 16, and they should be dismissed.

B. Failure to State a Claim and Dismissal on the Merits

1. Claim 2

In Claim 2, plaintiff alleges that his procedural due process rights were violated during his August 10, 2015 misconduct hearing when he was prevented from reading a document or presenting witness testimony and was asked to "just answer the questions." Am Compl. at 7-8.

It is well established that prison officials must comply with the requirements of procedural due process before taking action that implicates an inmate's protected liberty interests. *E.g. Sandin v. Conner*, 515 U.S. 472, 478-80 (1995). However, the Due Process Clause "confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Id.* at 480 (citation omitted). Accordingly, a plaintiff must show that the challenged action imposed an "atypical and significant hardship" when compared with ordinary aspects of prison life. *Id.* at 484.

Here, plaintiff does not allege that he was subjected to atypical and significant hardships during the seven days he was in segregated housing and the seven days he was denied privileges. *See id.* at 486 (finding that a 30-day "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010) (explaining that fifteen days of segregation did not constitute an "atypical and significant hardship in relation to the ordinary incidents of prison life"). In his surreply, plaintiff also asserts that he was denied access to "multiple" prison services for six months as a result of his hearing. Pl.'s Surreply at 3 (ECF No.

11 - FINDINGS AND RECOMMENDATION

56). Plaintiff does not identify the withheld "services" or argue that the denial of such services subjected him to atypical hardship. Accordingly, plaintiff's liberty interests were not implicated, and summary judgment should be granted on this claim.

   2. Claim 4

In Claim 4, plaintiff alleges: 1) "intentionally disbursing known incorrect information (box #'s to send kytes to) to inmates"; 2) the failure to respond to "multiple kytes trying to address this issue"; 3) the failure of the "available Inspector general" to return a phone call; 4) the use of "harsh treatment and profanity in direct violation of the signed code of ethics form CD 1382 and the [ODOC] code of conduct 20.1.3"; and 5) the filing of "false reports directly saying or insinuating that [plaintiff] had 'shat' in anger." Am. Compl. at 11-12.

Plaintiff fails to allege or present evidence that incorrect information or delays in responding to kytes prejudiced him in any way. *See, e.g., Brown*, 422 F.3d at 942-43 & n.18 (stating that a delay in responding to grievances may defeat a motion to dismiss if the plaintiff was prejudiced by the delay). Likewise, plaintiff alleges no violation of his rights arising from the Inspector General's alleged failure to return his telephone call. Although officers' use of "harsh" treatment (as alleged by plaintiff) or profanity is regrettable, plaintiff alleges no violation of law. Finally, plaintiff alleges no violation of law arising from the alleged false reports; he was disciplined for disobeying an order to return to his cell, not for defecating in the gym.

To the extent plaintiff's claims suggest state law or regulatory violations, this Court should decline to exercise supplemental jurisdiction over them. 28 U.S.C. § 1367(c).

   3. Claims 6 (in part) and 7

In Claims 6 and 7, plaintiff alleges violations of his substantive due process and Eighth Amendment rights based on the failure to prevent his assault on August 21, 2015. Am. Compl. at

14-18. Plaintiff alleges that Sgt. Garcia placed him in the housing unit where the attack occurred, and that Officer Dotson failed to take appropriate action before the assault. Defendants concede that plaintiff exhausted claims alleging Officer Dotson's failure to protect plaintiff.[3]

Plaintiff cannot allege a substantive due process violation based on these facts. "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (citation omitted). The Eighth Amendment is the explicit textual provision that protects plaintiff's rights against deliberate indifference by prison officials and due process analysis is not appropriate. *See Wolff v. Hood*, 242 F. Supp. 2d 811, 819 (D. Or. 2002); *Whitley v. Sepulveda*, 2017 WL 3641871, at *4 (N.D. Cal. Aug. 24, 2017).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Consequently, prison officials have a duty to take reasonable steps "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citation omitted); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Deliberate indifference must involve more than ordinary lack of due care for a prisoner's safety and constitute conduct that is akin "obduracy and wantonness." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Ultimately, a prison official is liable under the Eighth Amendment if the official "knows of and disregards an excessive risk to inmate

---

[3] Plaintiff's grievance did not mention a housing assignment by Sgt. Garcia or any other correctional official; therefore, this issue was not exhausted. Taylor Decl. Att. 7.

13  - FINDINGS AND RECOMMENDATION

health or safety." *Farmer*, 511 U.S. at 837. Prison officials "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, based on plaintiff's own allegations, Officer Dotson did not ignore plaintiff's concerns or fail to intervene on August 21, 2015. Officer Dotson asked plaintiff who had threatened him, and plaintiff could not identify the person.[4] Pl.'s Response at 20. After the assailant began attacking plaintiff, Officer Dotson called for back-up and intervened by using pepper-spray. At most, plaintiff alleges that Officer Dotson failed to pay adequate attention to a potential assault and utilized an intervention method – pepper spray – that also harmed plaintiff. While Officer Dotson's alleged inattention arguably could support a claim of negligence, it does not constitute deliberate indifference. Moreover, the use of pepper spray to stop the attack was not unreasonable under the circumstances. *E.g., Hahn v. Murphy*, 2011 WL 9378180, at *27 & n.17 (C.D. Cal. Sept. 23, 2011) ("It is well settled that an unarmed prison official has no constitutional obligation to intervene in an armed assault on an inmate when doing so would endanger his own safety.") (citing cases), *report and recommendation adopted*, 2012 WL 5456385 (C.D. Cal. Nov. 1, 2012). Accordingly, summary judgment should be granted on Claims 6 and 7.

4. Claim 13

In Claim 13, plaintiff alleges delays in processing his grievances, "equitable tolling" for time spent in segregation absent wrongdoing, the spoliation of evidence based on the failure to produce video evidence of his assault, and the failure to secure "weapons" – i.e., the shelf board used to attack him – in the prison housing unit. Am. Compl. at 23. Plaintiff apparently concedes the "equitable tolling" claim or allegation.

---

[4] Defendants also maintain that Officer Dotson asked plaintiff to stay within his view and suggested that plaintiff return to his cell. Plaintiff disputes these facts. Pl.'s Response at 20.

14 - FINDINGS AND RECOMMENDATION

With respect to the remaining allegations, plaintiff fails to allege or present evidence that delays in responding to his grievances or the absence of video evidence prejudiced him in any way. *See Brown*, 422 at 943 & n. 18. Further, the failure to secure "weapons" is akin to plaintiff's failure to protect claim and fails for the same reasons.[5]

## CONCLUSION

For the reasons set forth above, defendants' Motion for Summary Judgment (ECF No. 40) should be granted and this case should be dismissed. This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 18th day of December, 2017.

Thomas Coffin
United States Magistrate Judge

---

[5] Plaintiff also moved to compel the production of evidence and documents. (ECF No. 51) The evidence sought by plaintiff would not affect my analysis of the claims, and the motion is denied as moot.

15   - FINDINGS AND RECOMMENDATION